KATE LYONS, ET AL *v.* T. D. OSBORNE, ET AL.

[Abstract Kentucky Law Reporter, Vol. 7—305.]

**Fraud by Misrepresentations.**

One seeking to set aside a contract he has entered into and to get back real estate which he has conveyed in consideration of stock in corporations, on the ground that the person trading him the stock made false and fraudulent representations as to the value of the stock and the progress of the company, has the burden of showing he was induced to purchase the stock by fraud on the part of the seller, and that such representations were false and known to be false, and were intended to mislead him, and that he relied upon them.

APPEAL FROM LOUISVILLE CHANCERY COURT.

October 20, 1885.

OPINION BY JUDGE LEWIS:

Some time in the year 1879 one J. B. Ford, having discovered as he supposed a process for making cast glass and obtained a patent for his invention, went to the city of New York for the purpose of organizing a company with sufficient capital to carry on the business of manufacturing and selling the glass.

Two companies were organized, one called the Manhattan Glass Co., and the other The Glass Co. of America, and of each company Ford was made president and Thos. D. Osborne, secretary, the latter having in consideration of services rendered been given by the former an interest in his invention, and, by the terms of organization, a certain number of shares of stock in each company.

While the companies thus organized were making efforts to increase their cash capital so as to enable them to begin to carry through the enterprise, W. D. B. Merril made his appearance in New York and entered into a contract with Osborne, a memorandum of which they signed October 7, 1879, by which it was agreed that in consideration of certain lots of land in the city of Louisville to be conveyed by Merril to W. R. Ray, the father-in-law of Osborne, the latter was to transfer to the former one hundred fifty shares worth $100 each of stock in the first mentioned company, and fifty shares of $100 each in the last named company.

44

Merril soon after returned to Louisville where the parties resided, and October 14, 1879, executed a deed for the lots to Ray, the consideration mentioned being recited therein, and November 1, 1879, he and his wife acknowledged it before a deputy of the Jefferson County Court, though it was not lodged for record until December 31, 1879. December 9, 1879, Thos. D. Osborne in writing thereon transferred the certificate of the number of shares of stock agreed upon in each company to Merril. June 29, 1881, Ray and wife conveyed the lots mentioned to their daughter, wife of Thos. D. Osborne, Christina Osborne, the consideration expressed therefor being love and affection. There does not appear any other reason for the original conveyance of the lots to Ray instead of Osborne than that the latter was indebted to the former, which indebtedness was attempted to be satisfied in that way.

This action was brought by Merril, May 23, 1883, against Thos. D. Osborne and Christina Osborne to set aside the contract of exchange of the lots for the stock and to compel a reconveyance by the defendant to the plaintiff. The grounds set forth in the petition and relied upon for the rescission are that the plaintiff was deceived and induced to make the contract by the fraudulent misrepresentation of Thos. D. Osborne in respect to the progress the companies had made in erecting buildings and making preparations for manufacturing and putting the cast glass on the market, and that he was the owner of stock as shown by the books.

All the material allegations in the petition and amended petition being denied, it was incumbent on the plaintiff to prove them in order to obtain the relief sought by him. It seems to be conceded that the stock transferred to the plaintiff is now of little value if not entirely worthless. But it is also clear that at the time the plaintiff purchased from Osborne it did have a market value, and those owning it, including the plaintiff himself, put a high estimate on it. It did not become worthless until sometime during the year 1880, when the owners became satisfied that they could not raise sufficient cash capital to start the enterprise. It may be that the stock depreciated because the supposed discovery by Ford of the process of making cast glass proved to be illusive, but the evidence does not show it.

We think there is a failure on the part of the plaintiff to satisfactorily show he was induced to purchase the stock by fraud on the part of Osborne, for which he gives evidence in support of his

charge. Osborne testifies distinctly to the contrary. Besides we think the circumstances of this case show that Merril acted on his own belief irrespective of any representations by Osborne, and purchased the stock on his own motion, impressed with the value of the supposed invention and calculating upon great profits.

That those who organized the companies honestly believed that there were prospective profits in the undertaking is clearly proved, for one of them was made a witness in the case by the plaintiff and testifies: "There was a general craze on the subject of making cast glass pipes shown by all parties who contemplated promoting it." The letters written by Merril after his return from New York show that he had great confidence in the success of the enterprise and of large profits he was to realize by his connection with it. But he does not intimate that he placed his faith upon any representations by Osborne he now charges were made by him.

Having thus invested his means in a speculation in regard to which he had the means of informing himself and which it is evident he did investigate, relying on his own judgment and observation, we think he has no more right to now divest Christina of her title to the lots held under Ray, who is not alleged to have participated in any fraud, than Thos. D. Osborne would have had to recover back from him the stock if it had turned out to be worth its face value, which is many times more than the value of the lots.

He had an opportunity to find out the progress made in erecting buildings, and we think from all the circumstances of this case did know that the enterprise depended upon securing additional capital, the failure to do which can not be charged to Thos. D. Osborne more than to himself. If the allegation on that point is sufficient, the evidence fails to satisfactorily show Merril was mentally incapable of making a contract in October, 1879.

No effort has been made by him to have a transfer of the stock purchased of Osborne made on the books of the two companies, nor does any reason appear why he might not have had the transfer made. We see in the record no such evidence of fraud on the part of Osborne influencing Merril to make the contract, nor such evidence of a want of capacity on his part to make a contract, as authorizes a court of equity to interfere. The plaintiff voluntarily, and with the means of fixing the value of the stock and calculating the

profit and loss of his speculation, made the contract and it must stand.

The judgment dismissing the petition is therefore *affirmed*.

*L. N. Dembitz, J. H. Trabue, for appellants.*

*Russell & Helm, for appellees.*